**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

RUBY JONES, et al.,

                    Plaintiffs,

v.                                  CIVIL ACTION NO. 2:09-cv-0887

ACTAVIS TOTOWA, LLC, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are plaintiff's counsel's motion to withdraw [Dckt. 13] and defendants' motion for sanctions [Dckt. 15].

Plaintiff's counsel, Mr. Scott Weinstein, and his firm of Morgan & Morgan moved to withdraw based upon Mr. Weinstein's contention that irreconcilable differences had arisen between he and Ruby Jones, executor de son tort of the decedent plaintiff, making representation impossible. He asserted further that the plaintiff was served with a copy of his motion and did not object to withdrawal. Prior to a ruling on the motion to withdraw and after expiration of the safe harbor period, the defendants moved for sanctions under Federal Rule of Civil Procedure 11. The defendants asserted that the contention in the complaint that Digitek caused the decedent's injuries lacked any evidentiary support. A response in opposition and reply were filed.

The defendants assert that while the answers to the First Request for Admissions in this case indicate that plaintiff's counsel possessed medical and pharmacy records prior to the filing of the complaint, "none of those records shows that the Mr. Jones was diagnosed by a doctor with digoxin

toxicity, or that such toxicity was the medical cause in fact of his death." (Memo. in Suppt. at 2). They then conclude that "[s]ince no evidence supported the assertion that Digitek caused Mr. Jones's death, the filing of Plaintiff's complaint violated Rule 11 and the Complaint should be dismissed." *Id.* Based on this theory the defendants sent a safe harbor letter to plaintiff's counsel and when no correction to the challenged claim was made they filed the Rule 11 motion.

Plaintiff's counsel responded in opposition and asserted in pertinent part as follows:

The outcome of Defendants' discovery efforts revealed that Plaintiff's Counsel did in fact possess relevant medical and pharmacy records prior to filing suit, and that these records support the factual allegations asserted in the Complaint.

Specifically, at the time the Complaint was filed, Plaintiff's Counsel had the decedent's most recent prescription bottle for Digitek, which confirmed, through NDC number, that the Digitek pills ingested by the decedent in the few months leading up to his death were part of the Digitek recall. Plaintiff's Counsel had further confirmation of this fact by way of a letter from the decedent's pharmacy informing him that the Digitek he received was part of the recall. Plaintiff's Counsel also possessed records from the decedent's primary physician, Dr. Bradley Carter, reflecting the decedent's state of health prior to ingesting the recalled Digitek, as well as the decedent's death certificate. In addition, Plaintiff's Counsel had the benefit of lengthy and detailed discussions with the decedent's spouse, the Plaintiff herein, who witnessed her husband's symptoms following his ingestion of the recalled Digitek, including nausea, loss of appetite, dizziness, law back pain, swelling and heart palpitations, all of which are symptoms consistent with the ingestion of defectively-manufactured digoxin pills.

. . .

As to the instant case, Plaintiff's Counsel conducted a reasonable inquiry of available documents and witness accounts, including a review of a plethora of medical/causation information available to the public, (from FDA and many other sources) following the Digitek recall. Thereafter, Plaintiff's Counsel had reason to believe the existence of a causal link between the decedent's ingestion of Digitek and his injuries. Plaintiff's Counsel further reasonably believed that evidentiary support for the factual contentions set forth in the Complaint would be strengthened through further investigation and discovery, including expert testimony.

(Memo. in Oppos. at 2-3).

Plaintiff's counsel also contends generally that the unsupported premise of a bright line test of a diagnosis of digoxin toxicity presumed by the defendants does not exist at this point in the litigation and certainly did not exist at the time of the filing of the complaint.  Lastly he argues that he was faced with an impending statute of limitations deadline in which to file the plaintiff's complaint.  He contends that although the complaint was adequately supported for Rule 11 purposes regardless, his inquiry was certainly reasonable given that circumstance.

The defendants argue in their reply that:

> The death certificate makes absolutely no reference to digoxin toxicity. Similarly, the medical records from Dr. Carter make absolutely no reference to digoxin or digoxin toxicity....The records reviewed before suit was field provide no foundation for a good faith belief that Mr. Jones had any medical condition relating to digoxin toxicity or to digoxin at all for that matter.

(Reply Br. at 1).  In response to the statute of limitations argument they argue plaintiff's counsel had over two full months to investigate and that his motion to withdraw indicates that "he no longer wants any part of a case he should have never filed." *(Id.* at 2).  The defendants request dismissal of the action and a hearing regarding attorneys fees.

I find that Mr. Weinstein appears to have exhibited a measure of pre-filing diligence that would weigh against a sanctions award. More importantly, the substance of the motion for Rule 11 sanctions relies heavily on arguments that plaintiff's counsel did not serve defendants with any medical or pharmacy records when they served the plaintiff fact sheet[1] and that none of the records

---

[1] A fact defended by plaintiff's counsel in another filed case as a "failure to produce documents caused by a widespread internal administrative error, as evidenced by the fact that the undersigned initially did not produce documents in *any* of the undersigned's ten filed cases.  These fact sheet deficiencies were remedied through a supplementary document production prior to Defendants' Rule 11 filings." (See Richmond v. Actavis, Pl. Memo in Oppos. n. 5 at 6).  The court further notes that plaintiff's counsel denied allegations within defendants' other requests for
(continued...)

since provided indicate the decedent experienced elevated serum digoxin levels, that such levels were toxic or that such  toxicity was the medical cause in fact of his death. I find, as I have in other cases, that imposing a bright line, prefiling standard requiring evidence of causation in defense of a Rule 11 motion would in effect require counsel to secure the type of proof necessary to withstand a motion for summary judgment.   Such a purpose was not contemplated by Rule 11 and, accordingly, motions for Rule 11 sanctions will not be accepted as suitable substitutions for summary judgment motions to be filed at the appropriate time in this MDL.  Advisory Committee Notes on Rule 11 provide:

> [Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position,... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. . . .

Fed. R. Civ. P. 11, Advisory Committee Notes.

For all of the foregoing reasons, I hereby **DENY** the motion for sanctions [Dckt.15].  Accordingly, the defendants request for a hearing is also **DENIED**.

In response to plaintiff's counsel's motion to withdraw, I ordered the plaintiff to respond to the court in writing as to her retention of alternate counsel or her wish to proceed *pro se*.  Ms. Jones failed to respond to the court by the deadline.  Plaintiff's counsel notified the court that Ms. Jones had contacted them by phone well after the deadline and stated that she had not responded to the court's order because she had been ill and unable to do so.  She requested additional time to respond to the court's order.  She further indicated she does want to attempt to retain alternate counsel.

---

[1](...continued)
admissions - the subject of which have been an ongoing basis for filing of Rule 11 motions.

-4-

Given that Ms. Jones was provided a copy of counsel's motion to withdraw and did not object and that she has expressed her wish to attempt to retain alternate counsel, I **GRANT** counsel's motion to withdraw [Dckt. 13] with the condition that they assure Ms. Jones receives a copy of this memorandum opinion and order and it is fully explained to her.  I further **DIRECT** Ms. Jones to notify the court in writing of the name of alternate counsel within 30 days.  If Ms. Jones is unable to retain alternate counsel by the deadline she will then be deemed to be proceeding *pro se*.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to plaintiff, Ms. Ruby Jones, certified receipt requested, counsel of record and any unrepresented party.

ENTER:        April 9, 2010

Joseph R. Goodwin, Chief Judge